1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| SONNY JOYCE, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:22-cv-617 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| AMAZON.COM, INC., ANDREW R. JASSY, JEFFREY P. BEZOS, BRIAN T. OLSAVKSY, DAVID A. ZAPOLSKY, and NATE SUTTON, | |
| Defendants. | |

CLASS ACTION COMPLAINT - 1

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Plaintiff Sonny Joyce ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Amazon.com, Inc. ("Amazon" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Amazon stock between February 1, 2019 and April 5, 2022, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.       Amazon is a multinational technology company that engages primarily in the businesses of e-commerce, cloud computing, digital streaming, and artificial intelligence.  The Company was founded in 1994 and is headquartered in Seattle, Washington.  Amazon's common shares trade on the NASDAQ under the ticker symbol "AMZN".

3.       On the Company's Amazon.com e-commerce platform, Amazon sells both third-party merchandise and Amazon's own private-label products.  As the owner and operator of the

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Amazon.com e-commerce platform, Amazon has access to certain non-public data of the third-party sellers that use the Amazon.com platform.

4.      On or around June 3, 2019, the U.S. House Committee on the Judiciary (the "House Judiciary Committee") initiated a bipartisan investigation into the state of competition online.  The investigation, led by the Subcommittee on Antitrust, Commercial and Administrative Law (the "Subcommittee"), examined the business practices and market dominance of Facebook, Google, Apple, and, of particular relevance, Amazon (the "Subcommittee Investigation").

5.      In the course of the Subcommittee Investigation, the Subcommittee held several oversight hearings in which various officers of the above referenced companies, including their respective Chief Executive Officers ("CEOs"), offered witness testimony on topics such as the effect of market power on the press, innovation, and privacy, and the market dominance of the firms under investigation.  After each of the hearings, members of the Subcommittee submitted questions for the record to the witnesses.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Amazon engaged in anticompetitive conduct in its private-label business practices, including giving Amazon products preference over those of its competitors and using third-party sellers' non-public data to compete with them; (ii) the foregoing exposed Amazon to a heightened risk of regulatory scrutiny and/or enforcement actions; (iii) Amazon's revenues derived from its private-label business were in part the product of impermissible conduct and thus unsustainable; and (iv) as a result, the Defendants' public statements throughout the Class Period were materially false and/or misleading.

CLASS ACTION COMPLAINT - 3

7.     On March 9, 2022, media outlets reported that the House Judiciary Committee had requested that the U.S. Department of Justice ("DOJ") open a criminal investigation into Amazon and certain of its executives for allegedly lying to Congress about its business practices during the course of the Subcommittee Investigation.

8.     In response, Amazon asserted that there was "no factual basis" for the House Judiciary Committee's allegations.

9.     Then, on April 6, 2022, *The Wall Street Journal* published an article entitled "SEC Is Investigating How Amazon Disclosed Business Practices."  The article reported, *inter alia*, that the SEC's probe has been underway for more than a year and focuses on Amazon's disclosures regarding its use of third-party seller data for its own private-label business.

10.     On this news, Amazon's stock price fell $105.98 per share, or 3.2%, to close at $3,175.12 per share on April 6, 2022.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Amazon's stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Amazon is headquartered in this Judicial District,

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

15.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Amazon common stock at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Amazon is a Delaware corporation with principal executive offices located at 410 Terry Avenue North, Seattle, Washington 98109.  The Company's common stock trades in an efficient market on the NASDAQ under the ticker symbol "AMZN."

18.     Defendant Andrew "Andy" R. Jassy ("Jassy") has served as Amazon's CEO since July 2021.

19.     Defendant Jeffrey P. Bezos ("Bezos") served as Amazon's CEO at all relevant times until July 2021.

20.     Defendant Brian T. Olsavsky ("Olsavksy") has served as Amazon's Chief Financial Officer at all relevant times.

21.     Defendant David A. Zapolsky ("Zapolsky") has served as Amazon's General Counsel at all relevant times.

CLASS ACTION COMPLAINT - 5

22.     Defendant Nate Sutton ("Sutton") has served as Amazon's Associate General Counsel at all relevant times.

23.     Defendants Jassy, Bezos, Olsavsky, Zapolsky, and Sutton are sometimes referred to herein collectively as the "Individual Defendants."

24.     The Individual Defendants and Amazon are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

25.     The Individual Defendants possessed the power and authority to control the contents of Amazon's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Amazon's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Amazon, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

26.     Amazon is a multinational technology company that engages primarily in the businesses of e-commerce, cloud computing, digital streaming, and artificial intelligence.  The Company was founded in 1994 and is headquartered in Seattle, Washington.  Amazon's common shares trade on the NASDAQ under the ticker symbol "AMZN".

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

27.     On the Company's Amazon.com e-commerce platform, Amazon sells both third-party merchandise and Amazon's own private-label products.  As the owner and operator of the Amazon.com e-commerce platform, Amazon has access to certain non-public data of the third-party sellers that use the Amazon.com platform.

## Materially False and Misleading Statements Issued During the Class Period

28.     The Class Period begins on February 1, 2019, when Amazon filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2018 (the "2018 10-K").  In the 2018 10-K, Amazon failed to disclose that it was engaged in anticompetitive conduct with respect to its private-label business.  Rather, the report contained only a generic, highly general risk disclaimer to the effect that Amazon was "subject to general business regulations and laws, as well as regulations and laws specifically governing the Internet[] [and] e-commerce" and that these laws covered competition, among other things.  Amazon merely advised its investors that "[e]xisting and future laws and regulations may impede our growth" and failed to disclose the specific and known risks arising from the Company's anticompetitive business practices.

29.     In the 2018 10-K, Amazon reported net sales of $232.89 billion for the year.  Amazon failed to disclose, however, that these sales figures were unsustainable to the extent that they were derived from impermissible anticompetitive conduct.

30.     Appended to the 2018 10-K as exhibits were signed Certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bezos and Olsavsky, attesting that "the [2018 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

31.     On April 25, 2019, Amazon hosted an earnings call with investors and analysts to discuss the Company's Q1 2019 results (the "Q1 2019 Earnings Call").  When asked to comment on Amazon's efforts to sustain its growth rate in the third-party marketplace business, Defendant Olsavsky responded, in relevant part:

> So again, let me reiterate our approach. ***So main goal here is that it will allow customers to have the broadest selection, the best available price and also the most convenient options on how they receive the item. If we're delivering on those three elements, we're indifferent as to whether it's sold by us or a third-party. We actively recruit sellers to sell on our platform, it's because it adds selection.*** It adds - if it's in the FBA program, it adds Prime eligible selection.
>
> ***We spend billions of dollars a year, as Jeff said, on infrastructure, tools and services, not only to allow sellers to sell, but to help themselves more successfully.*** So we have a vested interest in the success of our sellers. Any growth acceleration or deceleration that you see can be very much tied to the total sales of the customer - that we have the customers in any country.
>
> So you'll still see the percentage of third-party units increased and has been steadily over the last few years. So again, the sellers are as important to us as anything for servicing the customers' need for price selection and convenience.

(Emphasis added.)

32.     On or around June 3, 2019, the House Judiciary Committee initiated a bipartisan investigation into the state of competition online.  The Subcommittee Investigation examined the business practices and market dominance of Facebook, Google, Apple, and, of particular relevance, Amazon.

33.     In the course of the Subcommittee Investigation, the Subcommittee held several oversight hearings in which various officers of the above referenced companies, including their respective CEOs, offered witness testimony on topics such as the effect of market power on the press, innovation, and privacy, and the market dominance of the firms under investigation.  After each of the hearings, members of the Subcommittee submitted questions for the record to the witnesses.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

34.     On July 16, 2019, Defendant Sutton testified before the House Judiciary Committee alongside executives from Google, Facebook, and Apple (the "July 16, 2019 Hearing").[1]  When asked by Representative Pramila Jayapal whether Amazon "track[s] [the data] and create[s] products that directly compete with those most popular brands that are out there," Defendant Sutton responded, in relevant part, that "data on popularity of products like much retail data is actually public data," but "[Amazon] do[es] not use any of that specific seller data in creating our own private brand products."

35.     At the same hearing, when asked by Subcommittee Chairman David N. Cicilline whether Amazon's algorithm for collecting data is used to support the sale of Amazon branded products, Defendant Sutton responded, in relevant part, "[o]ur algorithms, such as the buy box, is [*sic*] aimed to predict what customers want to buy [. . .] [a]nd we apply the same criteria whether you're a third-party seller or Amazon to that because we want customers to make the right purchase regardless of whether it's a seller or Amazon."

36.     As the Subcommittee Investigation proceeded, various reputable media outlets published reports that seemingly contradicted the testimony offered by Amazon's witnesses at the Subcommittee hearings.  For example, on July 18, 2019, the investigative news organization *Capitol Forum* published an article entitled, "Amazon: Former Employee Challenges Executive's

---

[1] *Online Platforms and Market Power, Part 2: Innovation and Entrepreneurship: Hearing Before the Subcomm. on Antitrust, Com., & Admin. L. of the H. Comm. on the Judiciary*, 116th Cong. 5-6, 23-24, 38-44, 46-47, 49-51, 64, 66-67, 70-71 (2019) (testimony of Nate Sutton, Assoc. Gen. Couns., Competition, Amazon.com, Inc.), https://www.govinfo.gov/content/pkg/CHRG-116hhrg39901/pdf/CHRG-116hhrg39901.pdf.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Denial About Company's Use of Independent Sellers' Data."[2]  The former Amazon employee stated that Amazon "routinely tracked the popularity of independent sellers' products sold through its website," and that "[the former employee] used to pull sellers' data to look at what the best products were [. . . .]"  Accordingly, *Capitol Forum's* reporting appeared to directly contradict Defendant Sutton's testimony.

37.     On July 23, 2019, in response to the publication of the *Capitol Forum* article and similar reporting by other media outlets, Chairman Cicilline sent Amazon a letter requesting that the Company supplement Defendant Sutton's responses to questions at the July 16, 2019 Hearing because "[i]n several instances, Mr. Sutton responded to questions from [the Subcommittee] by offering other ancillary information or partial and selective responses."[3]  Moreover, Chairman Cicilline's letter stated that "[i]n one instance, [Defendant Sutton's] answer has been contested by a former Amazon employee, raising questions about the veracity of his responses under oath."

38.     On July 25, 2019, Amazon hosted an earnings call with investors and analysts to discuss the Company's Q2 2019 results (the "Q2 2019 Earnings Call").  When questioned whether there would be any change in Amazon's business to focus "more towards third-party from first-party," Defendant Olsavsky stated, in relevant part:

> On your comment, I assume you meant vendors not merchants, but on the move from 1P to 3P, but no there shouldn't be -- I can't highlight anything related shifting in channel there, but I would say that we remain in different on whether -- ***we're focused on price convenience and selection for our customers. And whether product is a retail offering or third-party offering is not that important to us. As long as it's in stock, as long as it's priced competitively.***

---

[2] *Amazon: Former Employee Challenges Executive's Denial About Company's Use of Independent Sellers' Data*, THE CAPITOL FORUM (July 18, 2019).

[3] https://judiciary.house.gov/sites/democrats.judiciary.house.gov/files/documents/7.22.19%20letter%20to%20amazon%20(dnc).pdf.

CLASS ACTION COMPLAINT - 10

So, as you know our 3P selection has -- our 3P percent of units has been increasing over time and increased again in this quarter to 54% of units. *We continue to invest very heavily in our systems both for retail vendors and also for third-party merchants invest billions of dollars a year on behalf of then making Amazon a better place for customers to buy and increasingly not only vendor sales, but also third-party merchant sales.*

(Emphasis added.)

39.      On July 26, 2019, Defendant Zapolsky sent a letter[4] in response to Chairman Cicilline's July 23, 2019 letter, which stated, in relevant part:

[. . .] while we prohibit in our private label strategy the use of data related specifically to individual sellers, like other retailers we use aggregated store data (e.g., total sales) and customer shopping behavior (e.g., search volume) to identify categories and products with high customer demand over a given time period. Use of aggregated store data about customers' shopping behavior is far from novel among retailers with a private label business. Many retailers, including large retailers with extensive private brand offerings and retailers with marketplaces, know the sales volume for products in their stores.[] Customers' shopping behavior in our store is just one of many inputs to Amazon's private label strategy. We also use other factors employed across the retail industry, such as fashion and shopping trends highlighted in the press and on social media, suggestions from our manufacturers for new or complementary product lines, and gaps in our product assortment relative to our competitors.

* * * * *

[W]e use aggregated store data on total sales and search volume for categories and products (unless the product is only offered by a single seller, in which case we do not use that data).

* * * * *

[T]he featured offer algorithm does not favor any particular type of offer, but rather seeks to determine which offer to highlight based on a prediction of which offer customers would choose if they were to compare all offers in detail. If our prediction is that the customer would likely prefer a product from a Marketplace seller over the offer from Amazon, then we feature the product from the

---

[4]      https://judiciary.house.gov/sites/democrats.judiciary.house.gov/files/documents/07.26.19%20-%20amazon%20response.pdf.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Marketplace seller. We constantly refine our predictions to reflect customer preferences, and look to factors beyond price, including fulfillment speed, delivery speed, Prime eligibility, and seller performance.2 In the rare instances that our algorithmic weighting of these factors results in a tie in our prediction between an offer from Amazon retail and a product in Fulfillment by Amazon, we again endeavor to predict accurately customers' demonstrated preferences and feature the Amazon retail offer because our customers show a preference for products sold directly by Amazon.

Moreover, we make all offers easily available for all customers to shop. Customers may compare the closest competing offers and add them directly to their shopping cart via the "Other Sellers on Amazon" option [. . .], which is displayed on the product detail page directly below the featured offer. Customers may also browse all offers via the offer listing page, accessible via a hyperlink below the featured offer. There, customers may compare offers, sellers, shipping speeds, and prices. Our data also demonstrate that customers who compare the available offers overwhelmingly ultimately select the featured offer, further confirming that our criteria for selecting the featured offer accurately predict customer preference.

40.     On October 24, 2019, Amazon hosted an earnings call with investors and analysts to discuss the Company's Q3 2019 results (the "Q3 2019 Earnings Call"). When asked to comment on the opportunities and competitiveness for third-party sellers, Defendant Olsavsky responded, in relevant part, "[o]n third party I would say we only succeed if the third party sellers succeeds. So we're heavily invested in them as they are in us. So we are constantly investing on their behalf, adding new products and features and you know we are cognizant of their economics as well and we want a business that works for both of us and we set our fees accordingly."

41.     On January 31, 2020, Amazon filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2019 (the "2019 10-K"). In the 2019 10-K, Amazon failed to disclose that it was engaged in anticompetitive conduct with respect to its private-label business. Rather, the report contained only a generic, highly general risk disclaimer to the effect that Amazon was "subject to general business regulations and laws, as well as regulations and laws specifically governing the Internet[] [and] e-commerce" and that these laws covered competition, among other things. Accordingly,

CLASS ACTION COMPLAINT - 12

Amazon failed to disclose the specific and known risks arising from the Company's anticompetitive business practices.

42.     In the 2019 10-K, Amazon reported net sales of $280.52 billion for the year. Amazon failed to disclose, however, that these sales figures were unsustainable to the extent that they were derived from impermissible anticompetitive conduct.

43.     Appended to the 2019 10-K as exhibits were signed Certifications pursuant to SOX by Defendants Bezos and Olsavsky, attesting that "the [2019 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2019 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

44.     On May 1, 2020, members of the Subcommittee sent Defendant Bezos a letter[5] in response to an April 23, 2020 *Wall Street Journal* article which alleged that Amazon employees used sensitive business information from third-party sellers on its platform to develop competing products.  The letter stated that "[i]f these allegations are true, then Amazon exploited its role as the largest online marketplace in the U.S. to appropriate the sensitive commercial data of individual marketplace sellers and then used that data to compete directly with those sellers," and encouraged Defendant Bezos to testify before the Subcommittee.

45.     On May 15, 2020, Amazon sent a letter[6] in response to the Subcommittee's May 1, 2020 letter to Defendant Bezos, stating, in relevant part:

_____

[5]                                              https://judiciary.house.gov/uploadedfiles/2020-05-01_letter_to_amazon_ceo_bezos.pdf?utm_campaign=2719-519.

[6] https://judiciary.house.gov/uploadedfiles/letter_from_brian_huseman_to_committee__may_15_2020.pdf.

CLASS ACTION COMPLAINT - 13

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Because Amazon is privileged to have third-party sellers who now account for the great majority of sales of physical goods in Amazon's store, we determined years ago to take additional steps to give sellers comfort regarding their individual data. It was purely for that reason that we went beyond any legal requirement—and beyond the protections in place at any other store we are aware of—to begin to implement internal policies to restrict the use of non-public data specific to one particular selling partner to compete directly with sellers. We did this because we thought it was the right thing to do for our selling partners, who are also critical customers of Amazon—we wanted to go the extra mile to protect the trust of third parties selling in our stores. This policy, known internally at Amazon as our Seller Data Protection Policy, prohibits the use of nonpublic, seller-specific data to compete against our selling partners. As with any other employee policy at Amazon, we take the policy seriously, we train extensively on it, leadership reinforces that training, we audit for compliance, we examine allegations of breaches of the policy, and we iterate and improve based on what we learn. We do all of this solely in order to promote and enhance third party sellers' trust in Amazon, trust that we know is essential to our business.

* * * * *

In particular, on the issue of our use of data, the Committee asked in July 2019 whether Amazon uses "any of the data (including aggregate data on specific product categories) it collects on Marketplace transactions to inform its private label strategy?" We responded clearly: "Yes, while we prohibit in our private label strategy the use of data related specifically to individual sellers, like other retailers we use aggregated store data (e.g., total sales) and customer shopping behavior (e.g., search volume) to identify categories and products with high customer demand over a given time period." [] In response to the Committee's written questions for the record last fall, we elaborated that the policy prohibits "Amazon's private brand products business from using individual sellers' data to decide which products to launch" and that the business is prohibited from using such data "to make sourcing, pricing, or inventory decisions for its private brand products." [] Our testimony at the Subcommittee's July 16, 2019 hearing about our company policy reaffirmed our policy and is consistent with the written record. As even the former employee quoted in the Wall Street Journal made clear, our seller data protection policy is well known to our employees, and using individual seller data to aid the private label business would be a clear violation of that policy.

CLASS ACTION COMPLAINT - 14

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

46. On July 29, 2020, Defendant Bezos testified before the Subcommittee.[7] During the hearing, when asked by Representative Jayapal whether Amazon "ever access[ed] and use[d] third-party seller data when making business decisions," Defendant Bezos responded, in relevant part, "I can't answer that question yes or no. What I can tell you is we have a policy against using seller-specific data to aid our private label business, but I can't guarantee you that that policy has never been violated."

47. On September 4, 2020, Amazon submitted responses to the Subcommittee's post-July 29, 2020 hearing requests.[8] In response to a request from Chairman Cicilline regarding Amazon employees' access to third-party seller data, Amazon stated:

> Amazon first learned about the alleged violations of Amazon's voluntarily adopted Seller Data Protection Policy recently reported in *The Wall Street Journal* from *The Wall Street Journal*. The *Journal*'s reporting conflates product-pricing and top-seller data—both of which are publicly displayed in Amazon's store—with the individual seller data protected by Amazon's Seller Data Protection Policy. Amazon encourages employees to report any indication of potential lack of compliance with all internal policies, including the Seller Data Protection Policy, and Amazon responds appropriately to any such reports.

48. On October 4, 2020, Amazon sent a letter to the Subcommittee "to follow up to questions related to Amazon's Seller Data Protection Policy and related internal investigation

---

[7] *Online Platforms and Market Power, Part 6: Examining the Dominance of Amazon, Apple, Facebook, and Google: Hearing Before the Subcomm. on Antitrust, Com., & Admin. L. of the H. Comm. on the Judiciary*, 116th Cong. 11-12, 101-03, 109-11, 113-18, 122-25, 130-33, 138-40, 145-46, 148, 153, 156, 160-61, 164-66 (2020) (testimony of Jeffrey P. Bezos, CEO, Amazon.com, Inc.), https://www.govinfo.gov/content/pkg/CHRG-116hhrg41317/pdf/CHRG-116hhrg41317.pdf.

[8] https://docs.house.gov/meetings/JU/JU05/20200729/110883/HHRG-116-JU05-20200729-QFR052.pdf).

CLASS ACTION COMPLAINT - 15

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

raised during the Antitrust Subcommittee's recent hearing and in response to the October 3 email

from Subcommittee staff."[9]  The October 4, 2020 letter stated, in relevant part:

> Amazon's investigation into the *Wall Street Journal*'s allegations that Amazon
> employees violated the Seller Data Protection Policy is complete, and we are
> satisfied that the results confirm, as with all our policies, the seriousness with which
> we take this policy.
>
> * * * * *
>
> There is some confusion on Amazon's use of its own store data. Amazon's data
> about the costs of selling in its own stores—data like the cost to shelve, handle, and
> promote a product that all stores have and use to manage their business—does not
> become secret when it relates to a product sold by a third party in Amazon's store.
> Amazon stills needs to process and use this information, like all retailers, to operate
> its store and better serve customers. In determining whether to launch a new
> product, including its own private-label products, Amazon takes into account
> factors such as the costs to shelve, handle, and promote that product. And, like any
> other retailer, it combines such store data with its own procurement and other costs
> to determine whether it believes sales of that product will be profitable. But that
> store data is the same irrespective of the seller. And, we do not receive information
> on costs incurred to procure or manufacture a product, or related profit data, from
> third-party sellers.
>
> As an additional measure to protect the trust of our selling partners, Amazon's
> policy does not permit private brands employees to look at the number of sales
> made by a single seller. The policy does generally permit employees to look at
> aggregate sales data for products sold in the Amazon store—that is, data on the
> number of sales of a product in the Amazon store where there is more than one
> seller of that product. It is confusion on this point that seems to have animated this
> year's *Wall Street Journal* article,[] which appears to use the generic word "data"
> to mean both single-seller or aggregate data, resulting in the inaccurate implication
> that the use of any sort of Amazon sales data (even aggregate data) would violate
> the policy. Indeed, Amazon's records of past data queries related to the two products
> cited in the Wall Street Journal report show that a single former employee pulled
> and analyzed only aggregate data for both products in compliance with the Seller
> Data Protection Policy. And of course there is nothing novel about a retailer looking
> at its own store's aggregate sales data for a product in this way; retailers have used
> aggregate sales data for products sold in their stores for decades.

---

[9] https://judiciary.house.gov/uploadedfiles/letter_from_brian_huseman_to_committee__oct_04_2020.pdf.

CLASS ACTION COMPLAINT - 16

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

49.     On February 3, 2021, Amazon filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2020 (the "2020 10-K").   In the 2020 10-K, Amazon failed to disclose that it was engaged in anticompetitive conduct with respect to its private-label business.  Rather, the report contained only a generic, highly general risk disclaimer to the effect that Amazon was "subject to general business regulations and laws, as well as regulations and laws specifically governing the Internet[] [and] e-commerce" and that these laws covered competition, among other things.  Accordingly, Amazon failed to disclose the specific and known risks arising from the Company's anticompetitive business practices.

50.     In the 2020 10-K, Amazon reported net sales of $386.06 billion for the year. Amazon failed to disclose, however, that these sales figures were unsustainable to the extent that they were derived from impermissible anticompetitive conduct.

51.     Appended to the 2020 10-K as exhibits were signed Certifications pursuant to SOX by Defendants Bezos and Olsavsky, attesting that "the [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

52.     On October 18, 2021, members of the Subcommittee sent Amazon a letter in response to "recent, credible reporting that directly contradicts the sworn testimony and representations of Amazon's top executives—including former CEO Jeffrey Bezos—to the Committee about their company's business practices during our investigation last Congress."[10]

---

[10] https://judiciary.house.gov/uploadedfiles/letter_-_amazon_misrepresentations_-_10.18.21.pdf.

CLASS ACTION COMPLAINT - 17

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

The letter stated that the Subcommittee was "providing [the Company] with a final opportunity to provide exculpatory evidence to corroborate the prior testimony and statements on behalf of Amazon to the Committee," and encouraged Amazon to "provide the Committee with sworn, truthful, and accurate responses to this request as we consider whether a referral of this matter to the Department of Justice for criminal investigation is appropriate."

53.    On November 1, 2021, Amazon sent a letter[11] in response to the Subcommittee's October 18, 2021 letter, stating that Amazon "ha[d] cooperated fully with the Committee's inquiries and engaged in good faith throughout this process, and the resulting record fully supports the transparency, candor, accuracy, and truthfulness of all of our statements, including on the topics raised in your letter," and that the Company "ha[d] in no way lied to or misled the Committee, and any allegation to the contrary is false and unsupported."  Further, Amazon's response letter stated, in relevant part:

> [Amazon's] statements to the Committee regarding this policy have been truthful and consistent throughout. At the July 16, 2019, hearing our witness stated that Amazon does not use individual seller data to compete with third party sellers, clarifying specifically that Amazon does not "use any of that specific seller data in creating our own private brand products" and that Amazon does "not use their individual data when we're making decisions to launch private brands."[] We confirmed that policy and further elaborated upon our witness's live testimony in our July 26, 2019, follow-up letter to the Committee, explaining that, "While we prohibit in our private label strategy the use of data related specifically to individual sellers, like other retailers we use aggregated store data (e.g., total sales) and customer shopping behavior (e.g., search volume) to identify categories and products with high customer demand over a given time period."[] And in our October 11, 2019, response to the Committee's subsequent written questions for the record, we again confirmed that "Amazon prohibits Amazon's private brand products business from using non-public individual sellers' data to decide which products to launch, and Amazon prohibits the use of non-public individual sellers' data to make sourcing, pricing, or inventory decisions for its private brand

---

[11]  https://judiciary.house.gov/uploadedfiles/letter_from_brian_huseman_to_committee__nov_01_2021.pdf.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

products."[] In response to Vice Chair Jayapal's question during the July 29, 2020, hearing referencing our witness's testimony of a year prior, Mr. Bezos testified, "What I can tell you is we have a policy against using seller-specific data to aid our private label business, but I can't guarantee you that that policy has never been violated."[] He also again clarified that using "aggregate data is allowed under our policies,"[] that "aggregate data" refers to more than one seller, and that Amazon's policy permits the use of aggregate data when there are many or only two or three sellers of a product.[] In written responses to questions for the record after that hearing, Amazon again explained the differences between aggregate versus seller-specific data in the Seller Data Protection Policy, elaborated on our entirely consistent prior testimony, and answered questions about Amazon's enforcement and auditing of its Seller Data Protection Policy.

54.     On February 3, 2022, Amazon hosted an earnings call with investors and analysts to discuss the Company's Q4 2021 results (the "Q4 2021 Earnings Call").  When asked to discuss why third-party seller services experienced less growth, Defendant Olsavsky responded, in relevant part:

> On 3P, I think what you're seeing is a decreasing growth rate, much like the rest of the business, as I mentioned earlier, we're dealing with the very high growth period from Q3 of 2020 through Q1 of 2021. But on a two-year basis, you're still seeing 31% compounded annual growth in the 3P seller services revenue. Granted that was in the -- it was 34% last quarter, but it's maintaining. I think the bigger point is that sellers are definitely big winners in Q4. The percentage of units up to 56% was a record for 3P. ***We continue to invest a lot to make sellers -- help sellers be successful on our site. They're a big consumer of advertising as well because they use it to build their brands and add -- enable customers to see their selection and make purchases. So we're very happy with the third-party seller services businesses, and again, looking for ways to help sellers be successful***.

(Emphasis added.)

55.     On February 4, 2022, Amazon filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2021 (the "2021 10-K").  In the 2021 10-K, Amazon failed to disclose that it was engaged in anticompetitive conduct with respect to its private-label business.  Rather, the report contained only a generic, highly general risk disclaimer to the effect that Amazon was "subject to general business regulations and laws, as well as regulations and laws specifically governing the Internet[]

CLASS ACTION COMPLAINT - 19

[and] e-commerce" and that these laws covered competition, among other things.  Accordingly, Amazon failed to disclose the specific and known risks arising from the Company's anticompetitive business practices.

56.     In the 2021 10-K, Amazon reported net sales of $469.82 billion for the year. Amazon failed to disclose, however, that these sales figures were unsustainable to the extent that they were derived from impermissible anticompetitive conduct.

57.     Appended to the 2021 10-K as exhibits were signed Certifications pursuant to SOX by Defendants Jassy and Olsavsky, attesting that "the [2021 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

58.     The statements referenced in ¶¶ 28-31, 34-35, 38-43, 45-51, and 53-57 were materially false and misleading because the Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, the Defendants made false and/or misleading statements and/or failed to disclose that: (i) Amazon engaged in anticompetitive conduct in its private-label business practices, including giving Amazon products preference over those of its competitors and using third-party sellers' non-public data to compete with them; (ii) the foregoing exposed Amazon to a heightened risk of regulatory scrutiny and/or enforcement actions; (iii) Amazon's revenues derived from its private-label business were in part the product of impermissible conduct and thus unsustainable; and (iv) as a result, the Defendants' public statements throughout the Class Period were materially false and/or misleading.

CLASS ACTION COMPLAINT - 20

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**The Truth Emerges**

59.     On March 9, 2022, media outlets reported that members of the House Judiciary Committee had requested that the DOJ open a criminal investigation into Amazon and certain of its executives for allegedly lying to Congress about its business practices.  As *Bloomberg* reported:

> "Amazon repeatedly endeavored to thwart the Committee's efforts to uncover the truth about Amazon's business practices," a bipartisan group of lawmakers from the House Judiciary Committee wrote Wednesday in a letter to Attorney General Merrick Garland.  "For this, it must be held accountable."

> At issue is testimony given by Amazon during a 16-month congressional investigation into anticompetitive practices by tech giants.   Amazon representatives, including then Chief Executive Officer Jeff Bezos, told Congress the company forbids employees from using data from third-party sellers to compete against them or craft rival products.  But a series of media accounts suggested that Amazon employees have done just that, or at least found workarounds that render the policy useless.

> This isn't the first time committee members have raised concerns about Amazon's testimony.  Last October, the lawmakers asked Chief Executive Officer Andy Jassy to "correct the record" as they considered referring the matter to the Justice Department for criminal investigation.

> Since then, the company has continued to deny it missuses seller data and refused to turn over business records, the lawmakers wrote.  "As a result, we have no choice but to refer this matter to the Department of Justice," they wrote.

60.     In response, an Amazon spokesperson asserted that there was "no factual basis" for the House Judiciary Committee's allegations.

61.     Then, on April 6, 2022, *The Wall Street Journal* published an article entitled "SEC Is Investigating How Amazon Disclosed Business Practices."  The article reported, in relevant part:

> Federal securities regulators are investigating how Amazon.com Inc. has disclosed some details of its business practices, including how it uses third-party-seller data for its private-label business, according to people familiar with the matter.

> The Securities and Exchange Commission is probing how the technology giant— the largest U.S. e-commerce retailer and cloud-computing company—handled

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

disclosures of its employees' use of data from sellers on its e-commerce platform, the people said.  The SEC's enforcement division has asked for emails and communications from several senior Amazon executives, according to one of the people.

* * * * *

As a result of its 16-month investigation into technology companies including Amazon beginning in 2019, the [House Judiciary Committee] proposed a series of bills aimed at reining in tech giants. One of the measures targets Amazon's private-label business, seeking to make it unlawful for the company to give its own products preference over those of competitors, or to use sellers' nonpublic data to compete with them.

* * * * *

The SEC's probe has been under way for more than a year, one of the people familiar with the matter said.

62.     On this news, Amazon's stock price fell $105.98 per share, or 3.2%, to close at $3,175.12 per share on April 6, 2022.

63.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Amazon's stock, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

64.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Amazon stock during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

65.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Amazon stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Amazon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing during the Class Period misrepresented material facts about the business, operations and management of Amazon;

- whether the Individual Defendants caused Amazon to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

- whether the prices of Amazon stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

70. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Amazon shares are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's shares; and

- Plaintiff and members of the Class purchased, acquired and/or sold Amazon shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

72.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Defendants)**

73.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

74.     This Count is asserted against the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

75.     During the Class Period, the Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Amazon securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Amazon securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Defendants, and each of them, took the actions set forth herein.

CLASS ACTION COMPLAINT - 25

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

76.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Amazon securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Amazon's finances and business prospects.

77.    By virtue of their positions at Amazon, the Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Defendants.  Said acts and omissions of the Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

78.    Information showing that the Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Defendants' knowledge and control.  As the senior managers and/or directors of Amazon, the Individual Defendants had knowledge of the details of Amazon's internal affairs.

79.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Amazon. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Amazon's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Amazon shares was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Amazon's business and financial condition which were concealed by the Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Amazon shares at artificially inflated prices and relied upon the price of the stock, the integrity of the market for the shares and/or upon statements disseminated by the Defendants, and were damaged thereby.

80. During the Class Period, Amazon shares were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Amazon shares at prices artificially inflated by the Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said shares, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Amazon shares was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Amazon shares declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

81.     By reason of the conduct alleged herein, the Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

83.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     During the Class Period, the Individual Defendants participated in the operation and management of Amazon, and conducted and participated, directly and indirectly, in the conduct of Amazon's business affairs.  Because of their senior positions, they knew the adverse non-public information about Amazon's misstatement of income and expenses and false financial statements.

85.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Amazon's financial condition and results of operations, and to correct promptly any public statements issued by Amazon which had become materially false or misleading.

86.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Amazon disseminated in the marketplace during the Class Period concerning

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Amazon's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Amazon to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Amazon within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Amazon stock.

87.     Each of the Individual Defendants, therefore, acted as a controlling person of Amazon.  By reason of their senior management positions and/or being directors of Amazon, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Amazon to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Amazon and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

88.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Amazon.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED this 6th day of May, 2022          Respectfully submitted,

**BADGLEY MULLINS TURNER PLLC**

*/s/ Duncan C. Turner*
Duncan C. Turner, WSBA No. 20597
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Tel: (206) 621-6566
dturner@badgleymullins.com
*Of Counsel*

**POMERANTZ LLP**

Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

Jennifer Pafiti
(*pro hac vice* application forthcoming)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorneys for Plaintiff*

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686