THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| SONNY JOYCE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., ANDREW R. JASSY, JEFFREY P. BEZOS, BRIAN T. OLSAVKSY, DAVID A. ZAPOLSKY, and, NATE SUTTON,<br><br>Defendants. | No.: 2:22-cv-00617-JHC<br><br>**NOTICE OF MOTION AND MOTION OF JERRY HANNAH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD AND LIAISON COUNSEL AND MEMORANDUM OF POINTS AND AUTHORIES IN SUPPORT**<br><br>NOTE ON MOTION CALENDAR:<br>July 22, 2022 |

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF ALLEGATIONS ........................................................................................... 2

ARGUMENT ............................................................................................................................. 6

I.    MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ................................................................................................................... 6

    A.    The PSLRA Standard For Appointing Lead Plaintiff ............................................. 6

    B.    Under the PSLRA, Movant Should be Appointed Lead Plaintiff ........................... 7

        1.    Movant Filed a Timely Motion ................................................................. 7

        2.    Movant Has the Largest Financial Interest in the Relief Sought by the Class ........................................................................................................... 8

        3.    Movant Meets Rule 23's Typicality and Adequacy Requirements ............ 8

II.   MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND TERRELL MARSHALL AS LIAISON COUNSEL SHOULD BE APPROVED .......... 10

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**   Page(s)

*Arciaga v. Barrett Bus. Servs., Inc.*,
 No. C14-5884 BHS, 2015 WL 791768 (W.D. Wash. Feb. 25, 2015) ........................................8

*In re BP, PLC Sec. Litig.*,
 758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................................7

*Cook v. Atossa Genetics, Inc.*,
 No. C13-1836-RSM, 2014 WL 585870 (W.D. Wash. Feb. 14, 2014) ....................................8

*Lax v. First Merchants Acceptance Corp.*,
 Nos. 97 C 2715, *et al.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...................................8, 9

*Reinschmidt v. Zillow, Inc.*,
 No. 12-2084-RSM, 2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) ....................................8

*Reitan v. China Mobile Games & Entm't Grp.*,
 68 F. Supp. 3d 390 (S.D.N.Y. 2014) .....................................................................................10

*Richardson v. TVIA*, *Inc.*,
 No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ..................................9

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ...................................................................................................9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
 780 F.3d 597 (4th Cir. 2015) .................................................................................................11

**Statutes**

15 U.S.C. § 78u-4(a) .................................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4) ......................................................................................................................9

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
 Law360 (July 16, 2020) ........................................................................................................11

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
 Bloomberg Law (July 30, 2020) ...........................................................................................11

**PLEASE TAKE NOTICE** that on a date and time as may be set by the Court, Jerry Hannah ("Movant"), will respectfully move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), for entry of an Order (1) appointing Movant as Lead Plaintiff; and (2) approving Movant's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel and Terrell Marshall Law Group PLLC ("Terrell Marshall") as Liaison Counsel for the putative class (the "Class").

This motion is based on the accompanying Memorandum of Law in support hereof, the Declaration of Adrienne McEntee and exhibits filed therewith, the pleadings and other filings herein, and such other written and oral argument as may be permitted by the Court.

For the foregoing reasons, Movant respectfully requests that the Court: (1) appoint Movant as Lead Plaintiff pursuant to the PSLRA; (2) approve the Faruqi Firm as Lead Counsel and Terrell Marshall as Liaison Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

## MEMORANDUM OF LAW

## NATURE AND STAGE OF THE PROCEEDINGS

The Action presently pending before this Court is brought on behalf of those who purchased or otherwise acquired Amazon.com, Inc. ("Amazon" or the "Company") stock between February 1, 2019 and April 5, 2022, both dates inclusive (the "Class Period"), which seeks to recover damages caused by defendants' violations of the Exchange Act.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Jerry Hannah's Motion for Appointment of Lead
Plaintiff, Lead and Liaison Counsel - 1

TERRELL MARSHALL LAW GROUP PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103
(206) 816-6603

With losses of $165,111.09 Movant, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Movant also satisfies Rule 23's typicality and adequacy requirements. Movant's claims are typical of the Class's claims because he suffered losses on his Amazon investment as a result of Defendants' false and misleading statements. Further, Movant has no conflict with the Class and will adequately protect the Class's interests given his significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel. Accordingly, Movant is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Movant is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience and Terrell Marshall is an appropriate selection to serve as Liaison Counsel because it specializes in class action litigation and has substantial experience in securities litigation.

For the reasons summarized above and those explained more fully below, Movant's motion should be granted in its entirety.

## SUMMARY OF ALLEGATIONS

The complaint alleges that Amazon failed to disclose that: (1) the Company engaged in anticompetitive conduct in its private-label business practice, including giving Amazon products preference over those of its competitors and using third-party sellers' non-public data to compete with them; (2) that the foregoing exposed Amazon to a heightened risk of regulatory scrutiny and/or enforcement actions; (3) that Amazon's revenues derived from its private-label business were in part the product of impermissible conduct and thus unsustainable; and (4) as a result, Defendants' public statements throughout the Class Period were materially false and/or misleading. ¶ 58.[1]

---

[1] Unless stated otherwise, all ¶ __ reference are to the Class Action Complaint (ECF No. 1).

Jerry Hannah's Motion for Appointment of Lead
Plaintiff, Lead and Liaison Counsel - 2

TERRELL MARSHALL LAW GROUP PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103, (206) 816-6603

The Class Period begins on February 1, 2019, when Amazon filed its Annual Report on Form 10-K for the year ended 2018. ¶ 28. The Annual Report contained generic, highly general risk disclaimers, warning investors that Amazon was "subject to general business regulations and laws, as well as regulations and laws specifically governing the Internet[] [and] e-commerce" and that these laws covered competition, among other things. *Id*. Additionally, the Annual Report advised Amazon investors that "[e]xisting and future laws and regulations may impede our growth" and allegedly failed to disclose specific and known risks from the Company's anticompetitive business practices. *Id*.

On April 25, 2019, Amazon hosted an earnings call to discuss the Company's first quarter 2019 financial results. ¶ 31. During the call, Defendant Brian T. Olsavsky ("Olsavsky"), Amazon's CFO, was asked about Amazon's efforts to sustain its growth rate in the third-party marketplace business. *Id*. Olsavsky represented that Amazon was indifferent as to whether products were sold by the Company or third parties and that the Company was focused on providing customers the broadest selection of goods possible. *Id*.

On or around June 3, 2019, the House Judiciary Committee initiated a bi-partisan investigation into the state of online competition. ¶ 32. The Subcommittee investigation examined the business practices and market dominance of several large online companies, including Amazon. *Id*. The Subcommittee held several oversight hearings in which various officers of the companies, including Amazon, offered witness testimony on topics such as market power on the press, innovation, privacy, and market dominance. ¶ 33. After each hearing, Subcommittee members submitted questions for the record to the witnesses. *Id*.

On July 16, 2019, Defendant Nate Sutton ("Sutton"), Amazon's Associate General Counsel, testified before the House Judiciary Committee alongside executives from several other internet companies. ¶ 34. Sutton was asked directly whether Amazon tracked data and created products to compete directly with popular brands. *Id*. Sutton denied that Amazon used any specific seller data when creating its private label products. *Id*. During the same hearing, Sutton was asked whether Amazon's algorithm for collecting data was used to support the sale of

1  Amazon products. ¶ 35. Sutton responded that the Company's algorithm was aimed at predicting
2  what customers wanted to purchase and was applied equally between third-party sellers and
3  Amazon products. *Id*.

4  As the investigation proceeded, several media outlets published reports that contradicted
5  Amazon witness testimony. ¶ 36. For example, on July 18, 2019, *Capitol Forum* published an
6  article entitled, "Amazon: Former Employee Challenges Executive's Denial About Company's
7  Use of Independent Sellers' Data." The former employee stated that Amazon "routinely tracked
8  the popularity of independent sellers' products sold through its website," and that "[the former
9  employee] used to pull sellers' data to look at what the best products were [. . . .]" *Id*.

10  On July 26, 2019, Defendant David A. Zapolsky ("Zapolsky"), Amazon's General
11  Counsel, sent a letter to the House Judiciary Committee in response to the July 23, 2019 letter. ¶
12  39. Zapolsky's letter stated that the Company prohibited the use of data related to individual
13  sellers in its private label strategy, but that the Company did aggregate stored data to identify
14  categories and products with high customer demand. *Id*. The letter further represented that the
15  Company's algorithm did not favor any particular type of product offer. *Id*.

16  On October 24, 2019, Amazon held an earnings call to discuss the Company's third
17  quarter 2019 financial results. ¶ 40. During the call, Olsavsky was asked to comment on the
18  opportunities and competitiveness for third-party sellers. *Id*. Olsavsky responded that the
19  Company only succeeds if third party sellers succeed and touted the company's investment in
20  products and features to assist third party sellers. *Id*.

21  On May 1, 2020, members of the Subcommittee sent Defendant Jeff Bezos ("Bezos"),
22  Amazon's then-CEO, a letter in response to an April 23, 2020 *Wall Street Journal* article which
23  alleged that Amazon employees used sensitive business information from third-party sellers on
24  its platform to develop competing products. ¶ 44. Bezos responded in a letter dated May 15,
25  2020. ¶ 45. The letter represented, in sum and substance, that Amazon went above and beyond
26  what was legally required to protect the data of third-party sellers. Bezos also reiterated that the
27  use of third-party data to assist with Amazon's private brands was against Company policy. *Id*.

28  Jerry Hannah's Motion for Appointment of Lead   TERRELL MARSHALL LAW GROUP PLLC
    Plaintiff, Lead and Liaison Counsel - 4         936 N. 34th Street, Suite 300
                                                    Seattle, Washington 98103, (206) 816-6603

On July 29, 2020, Bezos testified before the Subcommittee. ¶ 46. During the hearing, he was asked whether Amazon "ever access[ed] and use[d] third-party seller data when making business decisions[.]" *Id*. Bezos responded, in relevant part, that he could not give a yes or no answer to the question. *Id*. Instead, he reiterated that the use of third-party data to aid Amazon's private label business was against Company policy. *Id*.

On September 4, 2020, Amazon submitted responses to the Subcommittee's post-hearing requests. ¶ 47. With regard to requests related to Amazon employees' access to third-party seller data, Amazon stated that it first learned about alleged violations of Company policy from the *Wall Street Journal* article. *Id*. Then, on October 4, 2020, Amazon sent a letter to the Subcommittee to follow up on questions related to Amazon's Seller Data Protection Policy. ¶ 48. The Company stated that its internal investigation into allegations that the policy was violated by employees was complete. *Id*. The letter stated that there was some confusion about Amazon's use of its own store data, stating that Amazon policy does allow the access and analysis of aggregate seller data. *Id*.

On February 3, 2021, the Company filed its Annual Report on Form 10-K (the "2020 10-K"). ¶ 49. The 2020 Form 10-K failed to disclose that Amazon was engaged in anticompetitive conduct with respect to its private label business. *Id*. Instead, the report contained generic, boilerplate risk disclosures. *Id*.

On October 18, 2021, members of the Subcommittee sent Amazon a letter in response to "recent, credible reporting that directly contradicts the sworn testimony and representations of Amazon's top executives—including former CEO Jeffrey Bezos—to the Committee about their company's business practices during our investigation last Congress." ¶ 52. The letter informed the Company that the Subcommittee was giving Amazon a final opportunity to provide exculpatory evidence. *Id*.

On November 1, 2021, Amazon sent a letter responding to the October 18, 2021, letter. ¶ 53. The letter stated that Amazon "ha[d] cooperated fully with the Committee's inquiries and engaged in good faith through this process, and the resulting record fully supports the

transparency, candor, accuracy, and truthfulness of all our statements including the topics raised in your letter," and that the Company "ha[d] in no way lied or misled the Committee, and any allegation to the contrary is false and unsupported." *Id*.

On February 3, 2022, Amazon hosted an earnings call to discuss its fourth quarter 2021 financial results. ¶ 54. On the call, Defendant Olsavsky was asked to discuss why third-party seller services experienced less growth. *Id*. Olsavsky responded by stating, among other things, that the Company continued to invest to help third-party sellers be successful. *Id*.

On March 9, 2022, media outlets reported that members of the House Judiciary Committee had requested that the Department of Justice ("DOJ") open a criminal investigation into Amazon and certain executives for lying to Congress. ¶ 59. In response, Amazon asserted that there was "no factual basis" for the House Judiciary Committee's allegations. ¶ 60.

Then, on April 6, 2022, *The Wall Street Journal* published an article entitled "SEC Is Investigating How Amazon Disclosed Business Practices." ¶ 61. The article stated that federal regulators were investigating how Amazon disclosed details of its business practices, including how the Company uses third-party seller data in its private-label businesses. *Id*. On this news, Amazon's stock price fell $105.98 per share, or 3.2%, injuring investors. ¶ 62.

## ARGUMENT

### I. MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

#### A. The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010).

### B. Under the PSLRA, Movant Should be Appointed Lead Plaintiff

As discussed below, Movant should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Movant holds the largest financial interest of any movant, and Movant otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1. Movant Filed a Timely Motion

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Sonny Joyce published notice of the lead plaintiff deadline via *Globe Newswire* on May 6, 2022. *See* Ex. A. Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before July 5, 2022. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Movant's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movant timely signed and submitted the requisite certification, identifying all of his relevant Amazon trades during the Class Period, and detailing Movant's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met.

### 2. Movant Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). To the best of his knowledge, Movant has the largest financial interest of any Amazon investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered. Nos. 97 C 2715, *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). In accordance with court nationwide, these *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District. *See, e.g.*, *Cook v. Atossa Genetics, Inc.*, No. C13-1836-RSM, 2014 WL 585870, at *3 (W.D. Wash. Feb. 14, 2014); *Reinschmidt v. Zillow, Inc.*, No. 12-2084-RSM, 2013 WL 1092129, at *2 (W.D. Wash. Mar. 14, 2013).

Overall, during the Class Period, Movant purchased 156 net and 200 total Amazon shares, expended $582,704.64 in net funds and suffered losses of $165,111.09 attributable to the fraud. *See* Ex. B. Movant is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. Movant Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Arciaga v. Barrett Bus. Servs., Inc.*, No. C14-5884 BHS, 2015 WL 791768, at *2 (W.D. Wash. Feb. 25,

2015). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Lax*, 1997 WL 461036, at *6.

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Movant's claims are clearly typical of the Class's claims. Movant purchased Amazon common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Amazon and certain of its officers under the federal securities laws. Because the factual and legal bases of Movant's claims are similar to those of the Class's claims, Movant necessarily satisfies the typicality requirement.

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing whether the adequacy requirement has been met, courts in this Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

As evidenced by the representations in his certification, *see* Ex. B, Movant's interests are perfectly aligned with—and by no means antagonistic to—the Class. Contemporaneously with the filing of the instant motion, Movant has submitted a Declaration with additional information about himself, his business background, and experience investing, clearly demonstrating his adequacy to represent class members. Prior to retiring, Movant served as the CEO of a payment processing company for over twenty years. *See* Ex. C. Movant has been investing for approximately forty years *Id*.

Movant has also selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section II, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. D. Consequently, Movant is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Movant respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## II.     MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND TERRELL MARSHALL AS LIAISON COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movant has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. D; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-

02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); and *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *Lowthorp v. Mesa Air Grp., Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (appointed as sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[2] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[3] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing

---

[2] *See* Ex. E (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

[3] *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

Finally, Movant's choice of liaison counsel, the Seattle based law firm Terrell Marshall Law Group, which has substantial experience in class action litigation. *See* Ex. F.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (1) appoint him as Lead Plaintiff; (2) approve his selection of the Faruqi Firm as Lead Counsel and Terrell Marshall as Liaison Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: July 5, 2022                    Respectfully submitted,

**TERRELL MARSHALL LAW GROUP PLLC**

By: */s/ Adrienne McEntee, WSBA #34061*
    Beth E. Terrell, WSBA #26759
    Email: bterrell@terrellmarshall.com
    Adrienne McEntee, WSBA #34061
    Email: amcentee@terrellmarshall.com
    936 N. 34th Street, Suite 300
    Seattle, WA 98103
    Telephone: 206-816-6603
    Facsimile: 206-319-5450

    James M. Wilson, Jr., *pro hac vice* forthcoming
    Email: jwilson@faruqilaw.com
    Robert W. Killorin, *pro hac vice* forthcoming
    Email: rkillorin@faruqilaw.com
    **FARUQI & FARUQI, LLP**
    685 Third Avenue, 26th Floor
    New York, NY 10017
    Telephone: 212-983-9330
    Facsimile: 212-983-9331

    *Attorneys for Jerry Hannah and [Proposed] Lead Plaintiff and [Proposed] Lead Counsel and Liaison Counsel for the putative Class*